UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTONIO RUTLEDGE,

                    Petitioner,        **No. 1:10-CV-0664(MAT)**
                                       **DECISION AND ORDER**
          -vs-

JOHN B. LEMPKE,

                    Respondent.

_____

## I.   Introduction

Proceeding <u>pro</u> <u>se</u>, Antonio Rutledge ("Petitioner") filed a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is incarcerated as the result of a judgment entered against him on June 6, 2008, in New York State Supreme Court, Monroe County (Valentino, J.), following a jury verdict convicting him of one count of first-degree manslaughter (N.Y. Penal Law ("P.L.") § 125.20(1)).

## II.  Factual Background and Procedural History

### A. Petitioner's Criminal Trial

In May of 2007, Petitioner and his brother, Christopher Walker ("Walker"), lived in a three-family house at 79 Watkins Terrace in the City of Rochester, New York. Walker was dating a woman named Tisa Willis ("Willis").

On the evening of May 25, 2007, Dean Westphal ("Westphal"), who also lived at 79 Watkins Terrace, was sitting on his front steps when he saw Petitioner and Walker leaving the house.

1

Westphal heard one of them say, "No is going to call you a bitch." T.357.[1] Later, Westphal heard fighting coming from 53 Watkins Terrace, where the victim, 65-year-old Bobby Simmons ("Simmons"), resided.

Just before 11:00 p.m., Harold Hardmon ("Hardmon"), who lived across the street from Simmons, was sitting on his front porch when he saw Petitioner and Willis walking down the street. Petitioner and Willis approached Simmons, who was sitting on his front porch. Petitioner and Willis started arguing loudly with him. Simmons told them to leave, to which Petitioner responded, "I told you I would fuck you up!" T.339-41. Hardmon watched as the verbal confrontation escalated into a physical struggle among Willis, Petitioner, and Simmons on Simmons' porch. After Simmons hit Petitioner in the head with a hammer, Willis left the porch for a moment to go tell Walker that Simmons was fighting with Petitioner and that Petitioner had gotten hit.

Petitioner's next-door neighbors, Mercedes Ruiz ("Ruiz") and Luis Diaz ("Diaz"), saw Walker run over to Simmons' house and observed that Simmons was holding a hammer and trying to force Willis, Walker, and Petitioner to leave. Lisa Frasier ("Frasier"), who lived across the street from Simmons, was walking home when she heard fighting coming from his porch.

---

[1] Citations to "T." refer to pages from the transcript of Petitioner's trial. The transcripts have been submitted by Respondent in connection with his response to the habeas petition. See Dkt #17-3 (Supplemental Transcripts Vol. 1); #17-4 (Supplemental Transcripts Vol. 2).

After she arrived home, she watched the fight from her front porch before deciding to walk across the street to Simmons' house. As she got closer, she saw Walker stab Simmons with a knife, causing him to fall off of the left side of the porch.

Hardmon related that as Simmons lay on the ground on his back, Petitioner, Walker, and Willis "stomped" on him by kicking them all over his body with their feet. Hardmon and Frasier ran over to try to aid Simmons. Petitioner, Walker, and Willis fled when Hardmon yelled at them. Hardmon and Frasier helped Simmons to stand up but he quickly collapsed. Hardmon called 911.

Meanwhile, Westphal, Ruiz, and Diaz saw Petitioner, Willis, and Walker return home. Walker, whose shirt was covered in blood, was holding a knife and a hammer. Ruiz saw Petitioner conceal something underneath the front porch. A short time later, Walker, Willis, and Petitioner left their house in a rush. The neighbors noticed that Walker had changed his clothes.

When the police responded to Watkins Terrace, they found Simmons, lying dead on the ground next to his front porch. During their search of the area, the police found Walker's bloody t-shirt folded around a hammer and a knife, both of which had been concealed under the front steps of Petitioner's house. DNA testing confirmed that the blood on the shirt, knife, and hammer matched Simmons' DNA profile. T.529, 533.

3

On May 29, 2007, the police apprehended Petitioner and Willis in Rochester, and they were arrested and charged with first-degree manslaughter. Several hours later, Walker's attorney contacted the police department and made arrangements for Walker to turn himself in the following day. On May 30, 2007, the police arrested Walker and charged him with second-degree murder. Petitioner, Willis, and Walker were jointly charged under the same indictment, but they were granted separate trials.

Petitioner proceeded to trial on April 28, 2008. The prosecution's proof at trial will be discussed in further detail, _infra_, in the context of the Court's analysis of Petitioner's legal insufficiency claims. The jury returned a verdict convicting Petitioner as charged in the indictment. On June 6, 2008, Petitioner was sentenced to a determinate prison term of 20 years, plus by 5 years of post-release supervision. Petitioner's conviction was unanimously affirmed on direct appeal. People v. Rutledge, 70 A.D.3d 1368 (4th Dep't), lv. denied, 15 N.Y.3d 777 (2010). He also filed a number of collateral proceedings in state court which were unsuccessful.[2]

**B. Petitioner's Habeas Claims**

---

[2] Petitioner's state-court proceedings as well as the procedural history of this habeas proceeding and his two other (now closed) habeas proceedings are summarized in the Court's decision and order (Dkt #60) granting Petitioner's most recent motion to amend.

4

Presently before the Court are Petitioner's original habeas claims, as raised in the petition (Dkt #1), first amended petition (Dkt #7), and first motion to amend (Dkt #16); and his new amended claims (Dkt #49). The original claims are as follows: (1) the evidence was legally insufficient to support the conviction for first-degree manslaughter under an accessorial theory of liability; (2) the verdict was against the weight of the evidence; (3) the trial court's ruling pursuant to People v. Sandoval, 34 N.Y.2d 371 (1974), constituted reversible error; and (4) the sentence violated the Eighth Amendment. Petitioner's new amended claims are as follows: (1) the prosecutor violated his discovery obligations under Brady v. Maryland, 373 U.S. 83, 87 (1963), by allegedly withholding a 911 tape which, according to Petitioner, contained exculpatory evidence; (2) co-defendant Willis was "coerced by D.A. to give testimony against [him] to receive a better plea agreement"; (3)(a) the evidence was legally insufficient to support the first-degree manslaughter conviction because the medical evidence showed that the victim's drug and alcohol use and pre-existing medical issues allegedly caused his death, and (b) the evidence was legally insufficient because testimony of Walker, Petitioner's brother and co-defendant, was "withheld from the jury"; (4) trial counsel provided ineffective assistance by (a) failing to present medical evidence concerning the victim's pre-

5

existing medical issues to the jury, and (b) failing to successfully suppress Petitioner's statements to police; (5) appellate counsel was ineffective for unspecified reasons; (6) Petitioner was denied an impartial jury because the jurors were "most[ly] white"; (7) the trial court erroneously denied Petitioner's motion to vacate pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 without holding an evidentiary hearing; (8) the prosecutor "illegally charged the jury"; and (9) the trial judge had had "upwards of 90%" of his cases overturned on appeal.

For the reasons set forth below, the Court finds that all of Petitioner's original habeas claims and new amended claims are without merit and are denied with prejudice.

## III. Preliminary Matters

The instant petition post-dates the 1996 amendments to 28 U.S.C. § 2254 set forth in the Anti-terrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, habeas relief is not available with regard to any claim adjudicated on the merits by a state court unless the state court's ruling was an unreasonable application of, or contrary to, clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d)(1). Some of Petitioner's claims do not appear to have been adjudicated on the merits, raising an issue of what standard should apply. See Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001) (assuming

6

the claim was not adjudicated on the merits in state court, pre-AEDPA standard of reviewing mixed questions of law and fact de novo applied). In the interest of judicial efficiency, the Court will apply a de novo, pre-AEDPA standard of review to all of Petitioner's claims. "Because AEDPA provides for a more deferential review of state court determinations than did its precursor, where a claim fails under the pre-AEDPA standard of review, the claim must also fail under AEDPA." Joyner v. Miller, No. 01.CIV.2157(WHP)(DF), 2002 WL 1023141, at *6 n.11 (S.D.N.Y. Jan. 7, 2002) (citing Washington, 255 F.3d at 55) (where claims failed under pre-AEDPA standard, claims necessarily failed under AEDPA)).

Notwithstanding the fact some of Petitioner's new amended claims may be unexhausted, the Court has the authority to deny them on the merits. See 28 U.S.C. § 2254(b)(2) (stating that a habeas petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies in the courts of the State"). The habeas statute does not articulate a standard for denying a petition containing unexhausted claims on the merits, and neither the Supreme Court nor the Second Circuit has established one. The various formulations suggested by district courts in the Second Circuit share "the common thread of disposing of unexhausted claims that are unquestionably meritless." Keating v. N.Y., 708 F.Supp.2d 292, 299 n. 11

7

(E.D.N.Y. 2010) (citations omitted). Here, invocation of 28 U.S.C. § 2254(b)(2) "is appropriate as none of the claims [asserted by Petitioner] raise even a colorable constitutional question." Ricks v. Superintendent, No. 10-CV-0785(MAT), 2012 WL 162608, *3 (W.D.N.Y. Jan. 19, 2012).

Respondent has asserted the defenses of non-exhaustion and procedural default as to some of the new amended claims. "[J]udicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999) (citing Lambrix v. Singletary, 117 S. Ct. 1517, 1523 (1997); Chambers v. Bowersox, 157 F.3d 560, 564 n. 4 (8th Cir. 1998) ("The simplest way to decide a case is often the best.")). Since the Court finds that Petitioner cannot prevail on any of his proposed amended claims, the Court sees no reason to belabor the more complicated issues of exhaustion and procedural default.

## IV. Discussion of the Original Claims

### A. Legal Insufficiency

Petitioner asserts that the prosecution presented no evidence that he "solicited, requested, commanded, importuned or intentionally aided" co-defendant Walker in the stabbing of Simmons. The Appellate Division rejected this claim, concluding that "[t]he People presented legally sufficient evidence that

8

the stabbing was the 'culmination of a continuum of events in which [Petitioner] participated and continued to participate.'" People v. Rutledge, 70 A.D.3d at 1369 (quotation omitted).

In considering a claim attacking the sufficiency of the evidence, a federal habeas court "must view the evidence in the light most favorable to the prosecution . . . and decide whether the record is 'so totally devoid of evidentiary support that a due process issue is raised.'" Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) (quotation omitted). The relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The habeas court must look to state law to determine the elements of the crime. Id. at 324 n. 16. Under New York law, a person is guilty of first-degree manslaughter when, "with intent to cause serious physical injury to another person, he causes the death of such person." N.Y. PENAL LAW § 125.20(1).

It is undisputed that Walker stabbed Simmons, and, as discussed below, the prosecution presented ample evidence that the stab wound was the proximate cause of death. Petitioner's conviction thus rested on a theory of accessorial liability. See N.Y. PENAL LAW § 20.00. Therefore, the prosecution was required to adduce proof beyond a reasonable doubt that Petitioner shared Walker's mental culpability, that is, he shared Walker's intent

9

to cause Simmons serious physical injury. Petitioner argues that proof was lacking that he intentionally aided Walker, because it was Walker who escalated the fight, without any provocation from Petitioner. However, "direct proof of an express agreement or statement [between Petitioner and Walker was] not required to show that [Petitioner] acted either as a principal or an accessory to a crime." Martinez v. Breslin, 07 Civ. 8671, 2009 WL 2244633, at *6 (S.D.N.Y. July 28, 2009) (citations omitted). In addition, before the argument, Petitioner directly threatened Simmons by announcing, "I told you I would fuck you up." T.339-41. A reasonable jury could have interpreted this statement as reflecting Petitioner's intent to cause serious physical injury to Simmons, even before Walker brought the knife to the fistfight. Regardless of whether Petitioner's and Walker's actions were planned beforehand, the totality of the evidence certainly supports the conclusion that Petitioner "knowingly participated and continued to participate even after his companion's intentions became clear," thereby supporting the jury's conclusion that Petitioner "shared a 'community of purpose' with his companion." People v. Allah, 71 N.Y.2d 830, 832 (1988).

Petitioner also contends that the prosecution failed to prove the element of intent to cause serious physical injury, because Petitioner had no weapon, and there was no proof that

Petitioner knew that Walker had a weapon. As a matter of New York law, however, "[a]ccessorial liability does not require that the person charged either possess or have control over the dangerous instrument or deadly weapon, or that [he] give it to the person who uses it, or even that [he] importunes its use aloud." In re Tatiana N., 73 A.D.3d 186, 190 (1st Dep't 2010).

Reviewing the record in the light most favorable to the prosecution, a rational factfinder could have found Petitioner guilty beyond a reasonable doubt of first-degree manslaughter as an accessory. The prosecution presented eyewitness testimony that it was Petitioner and Willis, not Walker, who initiated the ultimately fatal altercation with Simmons. In response to Simmons telling Petitioner to leave his property, Petitioner said that he had told Simmons that he was going to "fuck [him] up." T.339-41. Once Walker joined the fight, Petitioner did not try to stop Walker from stabbing Simmons. Instead, after the stabbing, Petitioner, along with Walker and Willis, "stomped" on Simmons, kicking him repeatedly with their feet, as he lay defenseless on the ground. T.264, 289, 343. This evidence was more than sufficient to establish beyond a reasonable doubt that Petitioner, with the intent to cause serious physical injury to Simmons, acted in concert with Walker in causing Simmons's death. See, e.g., Martinez, 2009 WL 2244633, at *6-*7 (holding that petitioner's actions in initiating the fight, failing to

11

stop his co-defendant from assaulting the victim, and continuing to kick the victim as he lay on the ground was "sufficient to allow a reasonable jury to infer that even if [the defendant] did not deal the fatal blow to [the victim], he 'solicit[ed], request[ed], command[ed], importune[ed], or intentionally aid[ed]' [his co-defendant] in causing the death of [the victim]"). Moreover, the fact that Petitioner and Walker fled the crime scene together without calling for help, despite the fact that Simmons was seriously injured, was further evidence of Petitioner's intent to aid Walker in committing the crime. See id. at *7 ("The fact that [petitioner] and co-defendant fled together was further evidence tending to corroborate a community of purpose.") (citation omitted).

## B. Verdict Against the Weight of the Evidence

Petitioner's weight of the evidence derives solely from a state statutory provision which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. CRIM. PROC. LAW § 470.15(5). In contrast to a legal insufficiency claim, a weight of the evidence claim does not rely on federal due principles. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). As such, it is not cognizable in this habeas proceeding. E.g.,

Correa v. Duncan, 172 F.Supp.2d 378, 381 (E.D.N.Y. 2001) (citing Jackson, 443 U.S. at 318-19); see generally 28 U.S.C. § 2254(a).

### C. Erroneous Sandoval Ruling

Petitioner argues that he was denied the right to a fair trial due to the trial court's Sandoval ruling, which would have allowed the prosecutor to cross-examine him regarding a previous prostitution conviction and the issuance of two bench warrants for his failure to appear in court. On appeal, the Appellate Division held that the ruling was proper and did not constitute an abuse of discretion. Rutledge, 40 A.D.3d at 1369. Although Respondent states that Petitioner exhausted this claim by fairly presenting it federal constitutional terms on direct appeal, Respondent also argues, somewhat inconsistently, that the claim implicates only matters of state evidentiary law and thus is not cognizable. As discussed below, the Court finds that this claim is not cognizable on an alternative basis.

"The decision to admit prior convictions to impeach a defendant 'has been characterized as evidentiary in nature,' and evidentiary rulings are "not redressable in a federal habeas corpus proceeding absent a showing that the particular errors were of constitutional magnitude." Rojas v. Senkowski, 95 Civ. 1866, 1996 WL 449321, at *3 (E.D.N.Y. July 29, 1996) (citing Jenkins v. Bara, 663 F. Supp. 891, 899 (E.D.N.Y. 1987); other citation omitted). Here, Petitioner did not testify. This

failure is "'fatal to any claims of constitutional deprivation arising out of a <u>Sandoval</u> type ruling'" because a petitioner's failure to testify "deprives a reviewing court of any 'adequate non-speculative basis upon which to assess the merits of that claim.'" <u>Rojas</u>, 1996 WL 449321, at *3 (quotation and citation omitted). Because Petitioner elected not to testify, habeas relief cannot lie, "regardless of the fact that the trial court's <u>Sandoval</u> ruling may have motivated [his] decision." <u>McKenzie v. Poole</u>, 03 Civ. 4253, 2004 WL 2671630, at *6 (E.D.N.Y. Nov. 23, 2004).

### D. Eighth Amendment Violation

Petitioner challenges the length of his sentence as violative of the Eighth Amendment. The Appellate Division rejected this claim as meritless. <u>Rutledge</u>, 70 A.D.3d at 1369.

The Supreme Court has articulated a narrow principle of "gross disproportionality" for measuring whether a prisoner's sentence violates the Eighth Amendment proscription against "cruel and unusual punishment." <u>E.g.</u>, <u>Harmelin v. Michigan</u>, 501 U.S. 957, 998 (1991) (Kennedy, J., concurring). As that court has noted, "'outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.'" <u>Ewing v. California</u>, 538 U.S. 11, 21 (2003) (quotation omitted). This is not one of those "exceedingly rare" cases.

14

For his conviction of one count of first-degree manslaughter under P.L. § 125.20(1), New York state law authorized a determinate sentence of 5 to 25 years. See N.Y. PENAL LAW § 70.02(1)(a), (3)(a). Petitioner received a sentence of 20 years, which was well within the statutory range. His sentence was less than the sentence meted out to Walker, who also was convicted of first-degree manslaughter but received the maximum sentence possible of 25 years. As the judge explained at Petitioner's sentencing hearing, Walker received the maximum because he had control of the knife and was responsible for stabbing the victim. Nevertheless, Petitioner clearly had significant culpability, for although he did not deliver the fatal wound to the victim, the trial testimony showed that he repeatedly "stomped on" the victim, who had been rendered helpless by the stab wound.

The Court likewise finds that Petitioner's sentence was not "grossly disproportionate" to the 8-year sentence received by his other co-defendant, Willis, after she pled guilty to one count of first-degree manslaughter. Although Petitioner and Willis appear to have had roughly the same degree of culpability, it was not improper for Willis to receive a more lenient sentence after electing to plead guilty. See Abraham v. Lee, No. 13 Civ. 2525 RWS, 2014 WL 3630876, at *15 (S.D.N.Y. July 22, 2014) ("Both Griffin and Williams accepted plea offers

15

and admitted to their roles in the shooting while Petitioner denied any wrongdoing and went to trial, factors that can warrant a higher sentence.") (citing Clark v. Bennet, No. 98 Civ.1445(FB), 1999 WL 360205, at *8 (E.D.N.Y. May 28, 1999) (disproportionate sentences warranted where defendant received higher sentence after trial than did co-defendants pursuant to their plea bargains)).

**V.  Discussion of the New Amended Claims**

   **A.  Ineffective Assistance of Trial Counsel**

Petitioner faults trial counsel for (1) "Failing to give real evidence to (Jury) as to the 911 tape"; (2) "Failing to give real evidence . . . . as to medical cause of victim (death) at trial"; and (3) failing to successfully suppress Petitioner's statements to the police.

To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, the petitioner must demonstrate that his "counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, he must show that counsel's deficient performance prejudiced his defense. Id. at 692. To demonstrate prejudice, the petitioner must prove that, but for counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different. Id. at 694.

16

As discussed below, the underlying <u>Brady</u> claim that counsel failed to assert is wholly speculative. Petitioner thus cannot establish that counsel performed deficiently or that his defense was in any way prejudiced by counsel's performance in this regard. <u>See</u> <u>Mitchell v. Artus</u>, No. 07 Civ. 4688(LTS)(AJP), 2008 WL 2262606, at *38 (S.D.N.Y. June 2, 2008) (finding that appellate counsel was not ineffective for failing to raise a meritless <u>Brady</u> claim).

Petitioner's second ineffectiveness claim also must fail. Petitioner asserts that trial counsel should have placed "real evidence" before the jury regarding the victim's cause of death. Petitioner does not elaborate on the nature of this so-called "real evidence". This claim, like Petitioner's <u>Brady</u> claim, is based on pure speculation that there was exonerating evidence that counsel failed to discover. Therefore, it cannot provide a basis for relief. <u>See</u> <u>Wood v. Bartholomew</u>, 516 U.S. 1, 8 (1995) (federal courts may not grant "habeas relief on the basis of little more than speculation with slight support"). In any event, as explained further below, the jury did hear evidence from the deputy medical examiner regarding the victim's extensive pre-existing health problems and his cocaine and alcohol use shortly before his death. Defense counsel thoroughly cross-examined the deputy medical examiner and elicited that the

victim's blood alcohol content was considerably over the legal limit.

With regard to Petitioner's third ineffectiveness claim, although counsel did not succeed in suppressing Petitioner's statements to the police, Petitioner was not prejudiced because the prosecutor ultimately did not introduce these statements at trial. Furthermore, Petitioner does not identify any specific deficiencies in counsel's performance at the suppression hearing, such as omitted arguments that trial counsel should have made.

All of the foregoing ineffective assistance of counsel claims lack merit and must be dismissed.

## B. <u>Brady</u> Violation Based on the Alleged Failure to Disclose a 911 Tape

In the attachment to the Motion to Amend (Dkt #49), Petitioner asserts that the prosecution allegedly withheld the existence of a 911 tape from the defense. Based on the testimony at trial, it appears that the 911 call to which Petitioner is referring was made by Hardmon, who witnessed the assault and called 911 after chasing Petitioner and his cohorts away from the injured victim.

An actionable <u>Brady</u> claim has three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must

have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). It is the habeas petitioner's burden to prove a violation of his constitutional rights by preponderating evidence. E.g., Machado v. Commanding Officer, Plattsburgh Air Force Base, 860 F.2d 542, 544 (2d Cir. 1988) (citation omitted). Petitioner has not satisfactorily alleged any of Brady's three elements, much less proven any of them by a preponderance of the evidence. Indeed, as Respondent notes, Petitioner fails to cite to any evidence to establish that the prosecutor withheld a 911 tape from the defense. Nor does Petitioner allege how the content of the 911 tape would have been exculpatory or would have provided significant impeachment material. This claim, based solely on vague speculation, is insufficient to establish a Brady violation. See, e.g., Mallet v. Miller, 432 F.Supp.2d 366, 377 (S.D.N.Y. 2006) ("[T]he mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas relief.") (citation omitted).

### C. Failure to Disclose Cooperation Agreement

According to Petitioner, trial counsel told him that his co-defendant, Willis, "must have" been coerced into providing evidence against him by the promise of a favorable plea agreement. Construing this allegation with the utmost

19

liberality, it appears that Petitioner is accusing the prosecution of failing to disclose that they had a cooperation agreement with Willis, thereby violating Petitioner's rights under <u>Brady</u>.[3] Plaintiff's sole allegation in support of this claim consists of vague, unsubstantiated, and speculative hearsay from his counsel that a cooperation agreement "must have" existed between Willis and the district attorney's office. This is insufficient to state a viable constitutional claim. <u>See</u>, <u>e.g.</u>, <u>Afrika v. Herbert</u>, No. 02-CV-458, 2007 WL 2323500, at *21 (W.D.N.Y. Aug. 10, 2007) (petitioner's conclusory assertion, based on an unsworn statement by witness's brother that there was a cooperation agreement between witness and prosecution was insufficient to rebut the state court's conclusion that there was no cooperation agreement).

### D. Legal Insufficiency of the Evidence

Petitioner asserts two new theories of legal insufficiency. First, he appears to contend that the prosecution failed to prove causation beyond a reasonable doubt, because the victim's drug use and pre—existing medical conditions could have contributed to the proximate cause of his death. At trial, the deputy medical examiner testified on direct examination that the victim had sustained a stab wound to the left chest area; the

---

[3] Although the prosecutor asked the trial court to place Willis on the witness list, T.11, she ultimately was not called at trial to testify.

knife had entered the body near the his left armpit. The wound
passed through the left chest cavity, puncturing the left
pulmonary artery. T.548-49. Due to the stab wound, the victim's
left lung had collapsed, and there was a significant amount of
blood in the chest cavity. T.549. The victim had some pre-
existing medical conditions, including evidence of several old
heart attacks, enlargement of the heart, severe heart disease,
severe pulmonary emphysema, some type of hepatitis, a few old
contusions to the brain, and an enlarged prostate. Furthermore,
the victim had ingested a substantial amount of alcohol and
cocaine shortly before his death. T.553-55. According to the
deputy medical examiner, the cause of death, to a reasonable
medical certainty, was the stab wound. Although there was
"probably some role in terms of contribution [to the cause of
death]" played by the victim's significant pre-existing medical
issues, T.555, the victim's injury was a "devastating" one, and
"even a younger individual likely would not survive these
injuries." Id.

   Under New York law, "[a] defendant's acts need not be the
sole cause of death; where the necessary causative link is
established, other causes, such as a victim's preexisting
condition, will not relieve the defendant of responsibility for
homicide." Matter of Anthony M./People v. Cable and Godbee, 63
N.Y.2d 270, 280-81 (1984). Thus, the prosecution was not

required to prove that the acts of Walker, Petitioner and Willis were the sole cause of Simmons' death, to the exclusion of any other potential cause such as his pre-existing medical conditions. Rather, the prosecution simply had to prove beyond a reasonable doubt that Petitioner and his co-defendants' actions were "an actual contributory cause of death, in the sense that they 'forged a link in the chain of causes which actually brought about the death[.]'" Matter of Anthony M., 63 N.Y.2d at 280, (quotation omitted). Given the eyewitness testimony, the medical evidence detailed above, and the deputy medical examiner's expert opinion on the cause of death, a rational jury had ample evidence on which to make such the required finding that the stab wound inflicted by Walker was an "actual, contributory cause" of Simmons' death. See, e.g., Klosin v. Conway, 501 F.Supp.2d 429, 442-43 (W.D.N.Y. 2007) (rejecting due process claim and finding legally sufficient evidence of causation to support felony murder conviction where stress suffered by victim as result of petitioner's break-in and gunpoint robbery exacerbated victim's arteriosclerosis and hypertensive heart disease, and caused the fatal heart attack that manifested two days after break-in).

Second, Petitioner asserts that the evidence supporting the conviction was legally insufficient because Walker's testimony was "withheld" from the jury. Petitioner offers no information

22

whatsoever in the motion to amend as to the substance of Walker's testimony. Mindful of its duty to construe the submissions of pro se litigants leniently to raise the strongest arguments they suggest, the Court notes that on the docket of this case is an affidavit signed by Walker on January 3, 2013, which Petitioner submitted as a separate pleading (Dkt #46), unrelated to any of his various motions to amend. In the affidavit, Walker states as follows:

> I observed on my arrival my brother Antonio Rutledge being struck with a hammer by an assailant hitting him on the head. Fearing for my brother's safety, I ran up on the porch to intervene and assailant then turned on me striking me also with the hammer. When I tried to flee, assailant grabbed me and I snatched away but he was all up on me so [I was] unable to flee. I was forced to try and cover my head with my left arm and lash out with knife as assailant was coming down with the hammer [sic] stabbing assailant.

Dkt #46, p. 2 of 3. The Court has construed this as the testimony from Walker that allegedly was "withheld" from the jury at Petitioner's trial. However, there is nothing in Walker's affidavit indicating that he actually was willing to testify at Petitioner's trial but was prevented from doing so. Stated another way, Petitioner has not established that Walker's testimony was available but was improperly excluded.

Petitioner appears to contend that if Walker was acting in self-defense, then he should be excused from liability as well, since he was alleged to have acted as Walker's accessory.

However, as the Second Circuit noted in a 2010 summary order, "there are no published cases suggesting that a defendant charged as an accomplice under New York law may claim self-defense where the alleged principal applied deadly physical force." Gibbs v. Donnelly, 402 F. App'x 566, 568, 2010 WL 4705116, at **2 (2d Cir. 2010). Thus, even if Walker had testified at Petitioner's trial that he was acting in self-defense against Simmons, this would not necessarily have excused Petitioner's criminal liability. Most importantly, Petitioner has not substantiated his vague assertion that Walker's testimony was "withheld" or otherwise improperly excluded at Petitioner's trial.

### E.  Ineffective Assistance of Appellate Counsel

In the motion to amend, Petitioner provided no information regarding how appellate counsel was ineffective. Even assuming that Petitioner is relying on his allegations in his coram nobis application, his claim fares no better. Petitioner never identified which issues counsel should have raised, instead claiming that his attorney did not discuss the appeal with him or give him the opportunity to review the filed brief, in which counsel allegedly failed to present "well-reasoned" arguments.

The two-pronged standard set forth in Strickland, 466 U.S. 668, supra, applies equally to claims of ineffective assistance of appellate counsel. E.g., Claudio v. Scully, 982 F.2d 798, 803

24

(2d Cir. 1992). "It is well established that conclusory allegations, such as these, are insufficient to meet the rigorous standard under Strickland." Otero v. Eisenschmidt, No. 01 Civ.2562HB AJP, 2004 WL 2504382, at *31 (S.D.N.Y. Nov. 8, 2004) (citing, inter alia, United States v. Vargas, 920 F.2d 167, 170 (2d Cir. 1990) (petitioner's affidavit making allegations in a "conclusory fashion" failed to demonstrate that counsel's decision not to call a witness was unreasonable), cert. denied, 502 U.S. 826 (1991); Slevin v. United States, 98 Civ. 0904, 1999 WL 549010 at *5 (S.D.N.Y. July 28, 1999) (§ 2255 case; finding that "[p]etitioner's conclusory allegations that counsel evinced 'a general lack of preparation' do not demonstrate that absent the alleged errors, the outcome of the trial would have been different"), aff'd, 234 F.3d 1263 (2d Cir. 2000)). Petitioner's vague and conclusory allegations do not permit the Court to conclude that appellate counsel's representation fell below "prevailing professional norms," Strickland, 466 U.S. at 688, or that "but for counsel's unprofessional errors, the result of the [appeal] would have been different." Id. at 694. Habeas relief cannot issue on this claim.

**F. Denial of Impartial Jury**

Petitioner vaguely asserts that his jury was not impartial because the jurors were "most[ly] white." As Respondent points

out, there is nothing in the record to establish the actual racial make-up of the jury. See T.28-216. In any event, this claim is without merit. Although the constitutional right to trial by an impartial jury "requires that the jury pool from which the petit jury is selected reflect a fair cross-section of the community so as to make possible and probable a petit jury representative of the community in which the defendant is tried[,]" the Supreme Court "has made clear . . . that the sixth amendment does not provide the criminal defendant with the right to a petit jury of any particular composition." Teague v. Lane, 820 F.3d 832, 843 (7th Cir. 1987) (citing Taylor v. Louisiana, 419 U.S. 522 (1975)).

## G.  Denial of CPL § 440.10 Motion Without a Hearing

Petitioner complains that his requests for hearings with regard to his C.P.L. § 440.10 motions were denied.  A majority of circuit courts have determined that "'federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.'" Franza v. Stinson, 58 F.Supp.2d 124, 151 (S.D.N.Y. 1999) (quoting Ortiz v. Stewart, 149 F.3d 923, 939 (9th Cir. 1998), cert. denied, 526 U.S. 1123 (1999); citing Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("[E]rrors in a state habeas proceeding cannot serve as a basis for setting aside a valid original conviction. An attack on a state habeas proceeding does not entitle the petitioner to

[federal] habeas relief in respect to his conviction, as it 'is
an attack on a proceeding collateral to the detention and not
the detention itself.'"), cert. denied, 518 U.S. 1022 (1996);
other citations omitted). "While the Second Circuit has not yet
addressed this issue, district court decisions within the
Circuit have followed the majority rule." Franza, 58 F. Supp.2d
at 152 (collecting cases). The Court agrees with and adopts the
majority view. Petitioner's vague assertion that he was
constitutionally entitled to have evidentiary hearing on his
C.P.L. § 440.10 motions does not state a cognizable habeas
claim.

### H.  Prosecutorial Misconduct

Petitioner's only allegation in support of this claim is
the obscure and vague statement that the prosecutor "illegally
charged the jury." Attachment to Dkt #16. Petitioner states that
"the judge mentioned it in court [and] told said D.A. to get out
of the jury chambers." Id. According to Petitioner, this
occurred "off the record." Id.

The foregoing allegation of prosecutorial malfeasance
strains credulity, especially since it is uncorroborated by
defense counsel or anyone else in attendance at Petitioner's
trial. See DiCesare v. Cowley, 99 F.3d 1149, 1996 WL 594276, at
*3 (10th Cir. Oct. 17, 1996) (unpublished opn.) (petitioner
claimed that state prosecutor addressed jury and submitted

detailed supporting affidavit from his mother; court was "disinclined to remand for an evidentiary hearing because [petitioner]'s claim that a state prosecutor addressed the jury during deliberations is palpably incredible and, thus, does not warrant one"). Moreover, it is fatally deficient as a claim for habeas relief since it is vague, unsubstantiated, and unsworn. See, e.g., United States v. LaBonte, 70 F.3d 1396, 1413 (1st Cir. 1995) ("A habeas application must rest on a foundation of factual allegations presented under oath, either in a verified petition or supporting affidavits. Facts alluded to in an unsworn memorandum will not suffice.") (internal and other citations omitted), rev'd on other grounds, 520 U.S. 751 (1997).

## I. Reversal Rate of the Trial Judge

Petitioner references, without substantiation, the alleged reversal rate of the judge who presided over his criminal trial. Petitioner does not explain why the judge's alleged reversal rate in other cases establishes that a constitutional violation occurred during any phase of his criminal proceeding in state court. This claim is patently frivolous and warrants no further discussion.

## VI. Conclusion

For the reasons discussed above, all of the claims in the most recent motion to amend (Dkt #49), the first motion to amend (Dkt #16), the original petition (Dkt #1), and the first amended

28

petition (Dkt #7), are **denied with prejudice**. Petitioner's request for a writ of habeas corpus is **denied with prejudice**. The Court declines to issue a certificate of appealability as Petitioner has failed to make a substantial showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. § 2253(c)(2).

      **SO ORDERED.**

                              S/ Michael A. Telesca

                           _____

                          HON. MICHAEL A. TELESCA
                    United States District Judge

Dated:  Rochester, New York
        March 5, 2015